3-1-0870 Maria O'Connor of John Bernard Cashen, Country Mutual Insurance Company at OPEC, New Carolina. Mr. Cashen, good afternoon. It's a lovely afternoon to make the drive from Ottawa. I always like coming here. So do we. I hope your heater is working. I hope your heater is working. I'd like to start by saying that I confess to a small legal misdemeanor in writing my briefs because I didn't get the research right to begin with. And it wasn't until my reply brief that I came up with the Manzo decision, which was pretty much directly in point. And I tell you, that happens when they switch the names of the books from ILS to revised statutes, from revised statutes. And so I only went back a certain way. And then in the reply brief, I got desperate of trying to find something. And Manzo is something. In that particular case, the trial judge held as a matter of law that there had been a breach of the statute, which is memorialized in Section 154.6. And that is the part of it in subsection E, which says that it's an improper claims practice compelling policyholders to institute suits to recover amounts due under the policies, if by offering substantially less than the amounts ultimately recovered in suits by them. You have a report of proceeding from December 10th of 2010 when I appeared in court with the defense counsel. And I brought this matter up to the judge. And the judge was somewhat mildly astounded by that. And he said, well, is there a definition of substantially less? And I said, no, there is no such decision. And then the same colloquy or type of colloquy took effect just before we started the trial in October of 2011, about 10 months later. And if the Manzo decision had been there, it might have made the trial court think a little bit. Because there was an award made based by a jury after they had been instructed that there was a liability under Section 155 in the case. And the jury came back with a number that was 36% higher than what the offer had been. And the trial judge held that that offer was too low, just as the jury found, in terms of its award. Before Manzo, all I had was a Mathis case, which is in my brief, which was not a Section 155 case. It was a case of the insurance company denying liability under circumstances where they said there was a noncompliance with the statute of limitation. But the insurance company did not write the proper letter beforehand that starts the running of the statute of limitations. But that was an insurance department regulation that was the basis of recovery. So we're constantly in a situation in this trial where the position of the defense was, well, in the first place, this can't be a personal action under the insurance code. Section 155 is a personal action. And I made it clear that that was our vehicle of recovery that we were relying upon, but that traditionally the violation of a statute or an administrative regulation can be the basis for a standard by which Section 155 can be judged. In this particular case, I asked the defense counsel who defended the arbitration, I said, you think that the extra $58,294 is a substantial sum? He said yes, but he said it's got to be compared to $155,000, which would have been our $40,000 plus the remaining $115,000 that had already been collected. And he said, well, that's around 25%. Well, it's more like 36% in line with Manzo. And it's 2.46 times what the offer was in this case. I want to frankly emphasize that we are asking this court to rule that this 2.46 times award is, as a matter of law, a violation of that particular subsection E of the statute. And that it was in a proper claim practice, which can only be judged after the award is made and not at the time that the original offer of $40,000 is made. The judge took the point of view that that insurance company, in this case, had a right to a bona fide defense, a defense that was designed not to allow any magnification of the loss, and was entitled to defend the liability under the contract. And the trial judge bought that argument. That was the basis of his decision. And ladies and gentlemen, you know, that can't consist with 155 and 154.6. These are statutes. This isn't just an administrative decision. This is a statement by the legislature of how to decide whether there's been too low an offer of settlement before the controversy goes to trial and is finished. That's the formula. Maybe some of us do not like the formula like that or can't accept the idea too easily, but that's what the legislature chose, and that is what we have to honor. I'd like to point out that in another situation here, I claimed that it was a violation of Section 154.6 for this company not to have a claim manual or any publications saying how to handle a first party UIM case and how to treat the petitioner or the plaintiff in a case like that. And you might wonder, well, why wouldn't they have a manual? Why wouldn't they have anything? I say it's deliberate, and I cited a California case to illustrate the situation that insurance companies think that if they have no paper trail, then it would be hard to bring a bad faith case or harder to bring a bad faith case. So that's another circumstance in this case that is a violation of the statute. The insurance company counsel said, well, there are standards. They're in the insurance contract, and they're in the statute. Well, there aren't any standards in there for exactly how to handle a UIM case. The section in the policy, Section 2, and the conditions in it explain how you go about adjudicating the matter by choosing the arbitrators and so forth. That's going to change a little bit in the future because of the Phoenix case, which now allows either a plaintiff or a defendant insurer to choose a trial by jury after an arbitration award has been entered in the case. So there really aren't any standards in that policy. It simply can't be read that way. And so all we have is a situation of vacancy in that regard. You know, and there's another thing that I've pointed out, and that is subsection N of 154.6. A claim denial letter or off-compromise letter is supposed to be sent out. I've never seen one in 49 years of doing this personal injury law. Never seen one once. But that's just another factor to show that I don't think the folks running insurance companies are well aware of this Section 154.6. They must not be. There is a privilege argument that I made, that if this case has to be sent back for a complete retrial, that question of privilege ought to be decided because I could not feel that I could cross-examine people working for the insurance company without all of the documents that were supposed to indicate their train of thought. And they all testified from memory. And the young woman who was the claim representative then with a $50,000 authority for settlement was handling 222 cases by the time in December of 2005. This arbitration was conducted. I don't think anybody can handle that volume of cases without a lot of late-night work. It probably doesn't work. This is also a case where the subsection E, subsection D, not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liabilities become reasonably clear. Thank you. So I'd like to point out that there are certain facts in this case that are indisputable. One, there wasn't an issue of liability. Number two, I don't see how it's possible to say that there are any reasonable standards promulgated by the insurance company. So I think that's factual. There was no letter of explanation afterwards. This was an incredibly complex defense of a 155 action, which took an awful lot of effort. The claim person involved, who was the principal person, is handling all these 222 cases. I think the magnitude of the loss cannot be an impediment to the application of Section 154.6 in terms of the substantially less issue. Every case can be defended in terms of the amount of the liability. Most cases are defended in a perfectly civil manner. I don't believe that the magnitude of the loss and the totality of circumstances and bona fide defense and so forth is a limit on Section 154.6 in terms of the substantially less issue. Thank you. Thank you. Mr. Carlson? Thank you. Of course, just a little differently, I think what we're looking at here is he's appealing from a full trial he had in the circuit court where the judge heard all the evidence and issued his written decision finding that venture mutual was not fixatious or unreasonable, where the standard that the Supreme Court has set on such a review is an abuse of discretion. That's the question, whether this judge will abuse his discretion in the result that he reached on the plaintiff's cause of action, which was brought under Section 155. You heard a lot of discussion about this 154, and I cited the case law including the American Service versus Passerelli case, which talked about 154 that lists the acts committed by insurance companies that constitute improper claim practices that are committed knowingly or with such frequency to indicate a persistent tendency to engage in that type of conduct. Several cases have held that that is a remedy of the Department of Insurance. It's not to say that every case that you have an award greater than what was offered, that that's a per se violation like counsel wants to argue. They're looking for patterns, that's why you don't see cases enforcing this on a private cause of action, but instead the courts have held it's for the Department of Insurance. But in any event, even though counsel filed a motion just the day before trial wanting to use it as a guidepost for his cause of action or 155, the court didn't deny him, and in his decision it said even if you took that into consideration, 154, those items, he specifically addressed it, they weren't vexatious and unreasonable. So the court gave him the benefit of even considering 154 and found country mutual was not vexatious and unreasonable in the arbitration. So he had everything, he had his trial, he had his statute that he was able to try to make an argument under, and the court ruled against him. This was a case that really never should have been brought. It was an arbitration, the legislature has set the method for arbitrating these types of disputes, uninsured or uninsured, where you don't settle. With a panel of three arbitrators, and we had an arbitration, as the testimony indicated, in country mutual's case, most, and Mr. Wunderlich who conducted the arbitration, the vast majority of them settled, 90-95% of them settled in their experience. Here we had an arbitration where it didn't settle, where the award was greater than what the attorney expected. There was an award of $213,000, it was a one-day arbitration, the insurer testified, her daughter, and a billing clerk. It was a short process. It was a longer process, the arbitration process, because they had an initial panel, for example, and the plaintiff's counsel, not Mr. Cashin, but Mr. Yergin, they were working together, and he had the case first, doing most of the work, had disclosed information to the first panel that caused them to recuse themselves. So they had to start all over again, additional expense to country mutual, all because of the plaintiff's counsel in the case. And there was later another arbitrator who recused himself because he had a conflict, he represented the hospital that performed, or the medical treatment was rendered. And we had a tortfeasor who didn't even pay their limits in the case. They had 100,000 limits, but they paid less than the limits, and country mutual didn't object to them settling for less than the limits. Immediately told him, no, you can go ahead and settle if that's what you want to, if the case is so valuable, he's accepting less than the tortfeasor's limits. There was a credit for the 10,000 medical payments, and a 5,000, there was a third-party defendant that paid only 5,000, and country mutual didn't require them to exhaust that limit either. So they collected 115,000, country mutual had offered 40,000, prior to the arbitration, 155,000, the award was 213,000, around 58,000, 25% more than the combined offer, which would take into account the money that had already been paid. And Mr. Warner testified that he never had a case like this where it ended up as 10 times specials. We have the detailed factual testimony of Mr. Wunderlich, we have the award of 24,000 medicals, only $100 of future medicals. She was not, there was no support for anyone that she was providing, there was no future treatment, she had a very good recovery, she had no restrictions. You know, to get 10 times the medical specials I submit in that jurisdiction is a large amount, it surprised Mr. Wunderlich. Country mutual didn't then seek to appeal or reject an appeal of the award, like they could have under the Rosen case, instead they immediately tended to check. But Mr. Cash had filed a lawsuit four days after the arbitration award, inserting 155. He has been on vendetta since the very beginning of this case, for a case that never again should have been brought. I want to talk briefly, Mr. Cash talks about his initial remarks about the Ford Motor Manso case that he cited in his reply brief as sort of providing a cause of action for 154. Of course in that case there was a trial where the judge had found the insurer was vexatious and unreasonable. In contrast to here, and that insurer appealed. There was no appeal though of whether 154 was properly considered or not, that wasn't an issue in the case. Instead the opinion when it talked about 154, it was talking about the Department of Insurance's regulations for determining the amount of cash settlement for a totally destroyed vehicle. Safeway had paid, offered an amount of money that didn't follow any regulations that didn't follow this particular regulation, which wasn't the regulations that Mr. Cash was talking about. They didn't have any evidence for how they came up with this sum, so they made a low-bow offer that the trial court found that there was no evidence for the value of that value when they were supposed to pay the fair market value. And then in its decision, the appellate court discussed 154 and 154.6, but it didn't say that it wasn't a discussion like the trial court used this section or improperly did or didn't. It doesn't explain how it may just be the court threw it in there as an analogy or something, but it wasn't like a holding of 154 provided a cause of action or not. It wasn't the regulation that the trial court had used. It was the trial court that used the regulations on determining value of a totally destroyed vehicle, which tells the insurer to determine the value this particular way. So there isn't a cause of action under 154 under the current case law, but again, in any event, the trial court here said even if I considered that, you have not met your burner proof under all the evidence that he heard. Now, he talked about privilege and the claims handlers. There was one claim handler that testified at trial, Tanya Drenius, that he deposed previously. She handled the case after Wayne Handler, who was also an attorney, and Mr. Bolger was disclosed as a witness. Mr. Cashin chose not to depose him. Mr. Wunderlich was also the attorney who handled the underlying arbitration, and he's the one that reported to the country mutual in the case. And he testified at trial about how they determine the value, the so-called claim manual here, which is the insurance policy. The insurance policy talks about when arbitration is determined, liability and damages. And he did what we all know attorneys do in determining. He was an attorney in that community. He took the statement of the insured. He got the medical records. He took the death of the doctor. He evaluated in terms of the injury in that community, looking at permanency, pain and suffering, all the things that you would normally do in a case. Mr. Cashin apparently wants some claim manual to say you walk in your office, turn on your computer, then I don't know, you're supposed to figure out that if you have a broken leg, the manual says it's worth $95,000 if you're this age. I don't know what he wants. But it's interesting, the trial judge asked Mr. Cashin directly, and I quote in my brief, well, Mr. Cashin, how do you evaluate cases? And he says he looks at the verdict report. That's just a one-paragraph summary of a case. And Mr. Cashin admits that he doesn't get it right almost on the time of what a case is worth. And he's just looking at a verdict report of some other verdict where Mr. Wunderlich and country are doing the actual records of this person, the statements of the witnesses, the definition of the person, talking to the doctors, looking at permanency, all of the things that you would do. The trial court found that country was fully engaged in the process. Because they didn't settle, because they offered 40, it doesn't mean that they necessarily would have stopped there like many cases. Mr. Cashin was higher than they thought it was worth, and maybe Mr. who knows what would have happened if he came down lower, country mutual could have gone higher. Interesting enough, Mr. Cashin asked the arbitration for $400,000. So he thought the case was really the true value is $213,000. He's asking for $400,000. Is that a bad faith? He's asking for $200,000 more than he says it's worth. He says the real value in this appeal is $213,000, what they found. But he's asking for way more than what he thinks it's worth. That's the point of an arbitration process where you disagree, you have the hearing, the award, and you have an award and you move on. And that's what country mutual did. They didn't refuse to participate, they didn't refuse to negotiate, the trial court heard all the evidence and found to the contrary. And now he's asking you in this appeal, although he didn't say it like orally in those words today, because he didn't address the correct standard, to find that this trial judge abused his discretion when he found that he failed to prove his case under the relevant case law and precedent under section 155. And he complains about the privilege issue or being surprised by testimony of Mr. Wonolik or Mr. Volga. Well, he could have deposed them. He chose not to. It was an interesting case because I saw it in the underlying case to depose Mr. Cashin and Mr. Yergin who conducted the arbitration because the point of their saying that the arbitration was handled vexatiously and unreasonably, how do you determine that but depose the people that conducted the arbitration? They're the only witnesses. And Mr. Cashin and Mr. Yergin resisted being deposed and the judge said they couldn't testify at trial unless they were deposed. They didn't want to testify at trial, they wanted just to submit documents to the court. And so they never, I think it was error for me not to be able to depose them in the case. They were able to submit some documents in the case and effectively testify through those documents where I couldn't cross-examine those documents. But as to my witnesses, they had chosen to depose one. They chose not to depose two others. And that was their strategy. And as to privileged documents, there was only three documents that the court found were privileged and the entire rest of the file was produced earlier to Mr. Yergin. And then at trial, Mr. Cashin couldn't find one of the documents he wanted to introduce and the judge was apologizing for some issue from two and a half years ago for not being ready to address it when the trial started and had commenced. For all those reasons, your honors, I believe that this again, as I said at the beginning, is a case that should never have been brought in the first place. We had an arbitration that was pursuant to the statute and the policy. It was concluded it was a different amount than the amount awarded, but we're going to create a new cause of action for every time the award is not the exact of the offer or demand. And particularly where here we're not just talking about a cause of action, we actually had a trial and the court heard all the evidence and found that the plaintiff's claims were without merit and did not meet the standard under the law. And therefore we respectfully request the court affirm the trial court of Pat G. Thank you. Thank you. Mr. Cashin. Let us suppose that there is a single primary consideration in this case, phrased in this manner. Can the substantially less standard of section 154.6E stand alone as the basis of recovery in a 155 case? Can it stand alone? It doesn't have to stand alone in this case since it was coupled with the lack of any standards that adhered within the particular insurer in this case. But this goes to an issue of how are we going to interpret the statute? That's what this case is about. And discretion is not the principal issue on review. The principal issue is that in interpreting a statute, that is a de novo determination by this court and not simply abuse of discretion. In thinking about the question that I just posed, substantially less in terms of whose point of view. I say the policy voters' point of view, not the insurer's point of view. This is a penal statute designed to prevent insurers from taking advantage of their own insurer. It doesn't apply in a third party case, just so we make that clear. Now, so we look at the person involved. Well, when I first saw this person, when I jumped in the case about four months, five months before the arbitration was going to go ahead, I look and I see a widow who's in her 80s and has suffered a certain type of injury. And if the insurance company wants to take a flyer in a case like this and see if they can persuade a judge in a bench trial to come in with a verdict of only $40,000, which is what they asked. I forget, we may have asked $30,000. And if that doesn't work, well, then this penal statute says that the insurance company is just going to have to stand up for that. That's why we ask that you say that the penalty in this case should be the extra $58,294 that the plaintiff received that they didn't offer, and that she gets her legal fees paid for that arbitration, which I've already been paid for, back, and gets her arbitrator's costs back, and gets her attorney's fees back. It's always really terrible for a lawyer to stand up and say, gee, I'd like to get a fee for doing this, and I spent a lot of time on it. But it's important to get this done right. And so I thought I'd try to give it my shot. Thank you. Thank you. We will be taking the matter under advisement and rendering a decision without undue delay for now.